# THOMAS O. SMITH
*v.*
# JOB A. RACE *et al.*

1. TEXAS CATTLE—*ownership or possession to create liability.* To make one liable to damages as the owner of Texas or Cherokee cattle for infection to other cattle, he must be the owner in the natural and ordinary sense of that term. A conditional ownership growing out of a lien will not make a party liable unless he has the actual possession and control of the cattle.

2. Thus, where a party signed notes with the owner of a lot of Texas cattle, upon which money was raised, and such surety was to have a lien upon the same, but they continued in the possession of the original owner until they had communicated disease to the plaintiff's cattle, it was *held*, that such surety, by virtue of his lien, was not liable to the plaintiff under the statute.

APPEAL from the Circuit Court of Moultrie county; the Hon. C. B. SMITH, Judge, presiding.

Mr. ANTHONY THORNTON, for the appellant.

Messrs. CREA & EWING, and Mr. A. B. BUNN, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by appellees, in the circuit court of Moultrie county, against Thomas O. Smith, John L. Mansfield, Ira W. Hatch, Harvey May, First National Bank of Decatur, and William Montgomery, to recover damages sustained to cattle owned by appellees, under the act of Feb. 27, 1867, Sess. Laws of 1867, page 169.

The first section of the act provides that it shall not be lawful for any one to bring into this State, or own, or have in possession, any Texas or Cherokee cattle.

Under the second section, all persons who violate section one are rendered liable for damages which may accrue by reason of such violation.

After the evidence had been introduced, and before the cause was submitted to the jury, appellees dismissed as to all of the defendants except appellant.

The jury returned a verdict against appellant for $4900. The court overruled a motion for a new trial, and rendered judgment upon the verdict.

The controverted question of fact on the trial was, whether appellant was the owner or had in his possession the Texas cattle that communicated the disease to the cattle of appellees.

We have held, in another case, in placing a construction upon the statute in question, that, when the legislature used the term "own," we would presume it was understood to be used in its natural and ordinary sense, and not a conditional ownership; and in the use of the term "possession," it must have been intended that usual and well known possession that men generally have of personal property; that where a party had a mere lien, and not the actual control of property, he could not be regarded in the possession in the sense the word is used in the statute.

It is not pretended that appellant was in any manner whatever connected with the bringing the Texas cattle into the State.

It appears from the evidence that, in the spring of 1868, Hatch & May purchased 1900 head of Texas cattle on Red river, and shipped them to Tolono, in this State. They were shipped in the name of Mansfield, who had previously agreed to furnish the money to pay for them, which he did, advancing for that purpose $20,000. About the first of June, 1868, some 300 head of these cattle were placed in the Montgomery pasture, which had been leased by Hatch the year previous. This pasture joined land occupied by appellees with their native cattle. The last of July, appellees' cattle became infected with a disease contracted from the Texas cattle in the Montgomery pasture, from which they died.

On the 27th day of June, 1868, Mansfield notified Hatch that he could not carry the cattle any longer, and that the money he had advanced on the purchase must be raised or he would sell the cattle. Hatch then made an arrangement with

492    SMITH *v.* RACE *et al.*    [Jan. T.

Opinion of the Court.

appellant by which appellant and his brother, Edward O. Smith, signed two notes with him for $10,000 each. Upon these notes the money was procured from the Union National Bank of Chicago, and Mansfield paid. Appellant was to receive five per cent for signing these notes, the notes and commission to be paid when the cattle should be sold.

Appellant was to have a lien upon the cattle to secure the payment of the notes, and they were to be sold at any time he might direct.

The cattle remained in the Montgomery pasture under the control of Hatch and his hired hands until about the first of December, when he shipped them to Chicago, and all that were fit for packing were slaughtered and packed, and the proceeds paid over to appellant, who paid the same upon the notes given to the Union National Bank, and the balance of the cattle were placed in a barn in Chicago to be fed.

It does not appear that appellant took possession of the cattle while they were in the pasture, or in any manner controlled them, and, as appears, never saw them until the last of November. Under such circumstances, we can not regard appellant as the owner or possessor of the cattle in the sense these terms are used in the statute. He did not own, for the proof fails to show a purchase. He did not have the possession, as the evidence is clear the cattle remained in the possession and under the control of Hatch after the arrangement made with appellant as they did before.

It is true, it was in proof before the jury that appellant admitted that he owned the cattle. These statements are not, however, inconsistent with the real arrangement entered into between appellant and Hatch.

Money had been raised on the credit of appellant's name, for the payment of which he was responsible, which was used to pay Mansfield the claim he held upon the cattle.

Under the agreement between Hatch and appellant, he had a lien upon the cattle to indemnify him for the responsibility incurred, and in that sense he might very properly have

regarded himself as the owner, but at the same time he was not the absolute owner, or the owner in that sense contemplated by the legislature in the enactment of the statute.

It is true, as insisted by appellees, that the question of ownership of the cattle was one of fact for the jury, yet, when the evidence is clearly insufficient upon which to base a verdict, we can not do otherwise than reverse.

The judgment of the circuit court will, therefore, be reversed and the cause remanded.

*Judgment reversed.*